ESTATE OF LUCRETIA DAVIS. JEPHSON, DECEASED; DAVID S. PLUME, DERMOND IVES, AND THE CHASE MANHATTAN BANK, N.A., COEXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6563-83.          Filed August 5, 1986.

*John Y. Taggart* and *Myron G. Finley,* for the petitioner.
*Jack Klinghoffer,* for the respondent.

JACOBS, *Judge*: By statutory notice of deficiency, respondent determined a deficiency of $847,458.38 in estate tax due from the Estate of Lucretia Davis Jephson, deceased. In his amended answer, respondent claimed a $263,655.19 increased deficiency; thus the total amount in controversy is $1,111,113.57.

After concessions, the only matter left for determination is the value of all the outstanding stock of two investment companies, R.B. Davis Investment Co. and Davis Jephson Finance Co., owned by Lucretia Davis Jephson at her death.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein.

Lucretia Davis Jephson died on April 9, 1979; petitioner is her estate. Petitioner's address at the time the petition was filed was New York, New York.

Petitioner reported in a timely filed Federal estate tax return the decedent's stock ownership in two wholly owned corporations, R.B. Davis Investment Co. (R.B. Davis) and Davis Jephson Finance Co. (Jephson Finance). R.B. Davis and Jephson Finance were investment companies, the former with 4,997 shares outstanding and the latter with 20,000 outstanding shares. R.B. Davis, formed under the laws of New Jersey in 1905, manufactured baking powder until 1955, when its assets were sold; thereafter, it operated as a holding company. Jephson Finance was formed in Delaware in 1933, and has been a holding company since its inception. The assets of both corporations consisted primarily of unleveraged portfolios (managed by Chase Manhattan Bank) of marketable securities with readily ascertainable fair market values on April 9, 1979 (the valuation date), as follows:

### R. B. DAVIS

#### Bonds

| Face value | Market value |
|---|---|
| $30,000 N.Y. State 3.6% due 5/1/87 | $22,839 |
| 20,000 N.Y. State 3.6% due 11/1/87 | 14,980 |
| 50,000 N.Y. State 3.6% due 11/1/85 | 30,865 |
| 70,000 Penna. State Gen. Oblig. 5.9% due 12/15/92 | 67,277 |
| 50,000 Suffolk County Gen. Oblig. 3/5% due 9/1/83 | 33,630 |
| | 169,591 |

#### Certificate of Deposit

| | Market value |
|---|---|
| Continental Illinois Bank 9½% due 3/30/79 principal and accrued interest | $116,306 |

#### Common Stocks

| Number of shares | | Market value |
|---|---|---|
| 1,800 | Merck & Co. | $119,700 |

| Number of shares | | Market value |
|---|---|---|
| 1,000 | Schlumberger Ltd. | $106,563 |
| 6,286 | Scudder Managed Reserves | 53,042 |
| 500 | Smithline Corp. | 47,156 |
| 2,800 | Standard Oil Co. of Indiana | 177,450 |
| 8,000 | Virginia Electric & Pwr. Co. | 101,500 |
| 2,500 | Yellow Freight Systems Inc. | 51,562 |
| 3,500 | Aluminum Co. America | 190,313 |
| 1,500 | AT&T | 92,625 |
| 1,000 | Avon Products | 46,750 |
| 4,000 | Carolina Power & Light | 83,000 |
| 2,000 | Caterpillar Tractor | 116,750 |
| 800 | Coca-Cola Co. | 33,000 |
| 4,000 | Continental Oil | 137,250 |
| 1,000 | Digital Equipment | 55,812 |
| 800 | E.I. DuPont & Co. | 114,250 |
| 1,300 | Eastman Kodak | 84,013 |
| 4,000 | Florida Power Corp. | 122,500 |
| 2,500 | General Electric | 119,219 |
| 3,500 | General Mills, Inc. | 87,859 |
| 2,200 | Houston Ind. Inc. | 66,412 |
| 500 | IBM | 159,188 |
| 4,000 | International Paper | 186,250 |
| 2,500 | Lowes' Co. Inc. | 120,312 |
| 2,000 | Mapco Inc. | 62,250 |
| 1,000 | McDonald's Corp. | 42,125 |
| | | 2,579,851 |
| | Total bonds, certificate of deposit, and stocks | 2,865,748 |

## JEPHSON FINANCE
### Bonds

| Face value | | Market value |
|---|---|---|
| $100,000 | Baltimore Gen. Oblig. 4.1/4% due 10/15/85 | $87,000 |
| 100,000 | California Gen. Oblig. 3.1/2% due 7/1/81 | 94,390 |
| 50,000 | Kentucky Gen. Oblig. 3.1/8% due 7/1/87 | 40,030 |
| 100,000 | Los Angeles City Unified School 3.1/2% due 2/1/84 | 88,450 |
| 50,000 | Mass. Bay Trans. Auth. 3.8% due 3/1/98 | 32,510 |
| 100,000 | Milwaukee Met. Sewr. Dist. 33.4% due 2/1/83 | 89,980 |
| 100,000 | Minn./St. Paul 3.7% due 1/1/85 | 87,240 |
| 50,000 | Nassau County Gen. Oblig. 3.4% due 11/15/82 | 44,525 |
| 100,000 | New Jersey Gen. Oblig. 3% due 3/1/85 | 82,960 |
| 50,000 | NYS Gen. Oblig. 4% due 11/15/84 | 44,070 |
| 100,000 | NYS Gen. Oblig. 4% due 11/15/86 | 83,760 |
| 70,000 | Oakdale CA Sewr. Dist. 3.05% due 7/1/2004 | 36,000 |
| 75,000 | Oregon Gen. Oblig. 3.3/4% due 8/15/79 | 74,460 |
| 175,000 | Penna. Gen. Auth. 4.4% due 7/15/83 | 160,860 |
| (Unspecified) | Texas Gen. Oblig. 3% due 8/1/86 | 20,093 |
| | | 1,066,328 |

### Certificate of Deposit

| | Market value |
|---|---|
| Continental Ill. Bank 9½% due 3/30/79 principal and accrued interest | $536,411 |

### Common Stocks

| Number of shares | | Market value |
|---|---|---|
| 1,500 | McDonald's Corp. | $63,188 |
| 1,200 | Merck & Co., Inc. | 79,800 |
| 2,500 | Monsanto Co. | 131,094 |
| 2,500 | J. P. Morgan & Co. | 115,469 |
| 2,000 | J. C. Penny Inc. | 58,880 |
| 1,000 | Proctor & Gamble | 80,750 |
| 2,000 | Revlon Inc. | 99,000 |
| 3,000 | Roadway Express | 84,825 |
| 9,475 | Scudder Managed Reserves (Mutual Fund) | 94,653 |
| 2,000 | Standard Oil of Ohio | 100,750 |
| 5,000 | Texas Utilities | 96,562 |
| 2,500 | Union Camp Corp. | 126,250 |
| 1,500 | Union Pacific Corp. | 94,781 |
| 3,000 | American Express Co. | 92,250 |
| 4,000 | AT&T | 247,000 |
| 4,000 | Atlantic Richfield | 259,250 |
| 1,500 | American Natural Resources Co. | 62,231 |
| 3,000 | Bank America Corp. | 76,125 |
| 5,000 | Carolina Power & Light Co. | 103,750 |
| 4,000 | Chase Manhattan Corp. | 129,750 |
| 2,500 | Chubb Corp. | 98,125 |
| 3,000 | Citicorp | 69,750 |
| 4,000 | Colgate-Palmolive Co. | 69,750 |
| 2,000 | Continental Oil Co. | 68,625 |
| 2,500 | Diamond Int'l. | 92,500 |
| 2,000 | Digital Equipment Corp. | 111,625 |
| 6,000 | Dow Chemical | 170,250 |
| 2,000 | Dresser Ind. | 89,250 |
| 2,000 | Eastman Kodak | 129,250 |
| 2,500 | Eaton Corp. | 94,219 |
| 4,000 | Exxon | 214,250 |
| 4,000 | Florida Power & Light | 110,000 |
| 2,000 | General Electric | 95,375 |
| 2,200 | Houston Ind. Inc. | 66,412 |
| 1,895 | IBM | 603,321 |
| 7,000 | IT&T | 201,250 |
| 4,500 | Johnson & Johnson | 314,719 |
| 3,000 | Lowe's Co. Inc. | 144,375 |
| 2,000 | Macy & Co. | 71,250 |
| 2,500 | Marathon Oil | 168,437 |
| | | 5,179,091 |
| | Total bonds, certificate of deposit, and stocks | 6,781,830 |

The book and market values of the assets, liabilities, and shareholder's equity of each company on the valuation date were as follows:

### R. B. Davis

Book and Market Value

April 9, 1979

| SECURITIES: | Book value | Market value |
|---|---|---|
| Bonds | $336,000 | $169,591 |
| Stocks | 2,271,073 | 2,579,851 |
| | 2,607,073 | 2,749,442 |
| CASH ACCOUNTS: | | |
| Certificate of deposit and accrued interest | 116,306 | 116,306 |
| Investment advisory -principal | 326 | 326 |
| -income | 3,902 | 3,902 |
| Checking | 94,996 | 94,996 |
| Accrued income | 3,079 | 8,136 |
| Total assets | 2,825,682 | 2,973,108 |
| Less: Accounts payable | 1,650 | 1,650 |
| NET WORTH | 2,824,032 | 2,971,458 |
| Common stock | 499,700 | 499,700 |
| Paid in surplus | 444 | 444 |
| Retained earnings | 2,323,888 | 2,323,888 |
| Appreciation - market value | - - - | 147,426 |
| SHAREHOLDER'S EQUITY | 2,824,032 | 2,971,458 |
| Per share (4,997 shares) | 565.15 | 594.65 |

### Jephson Finance

Book and Market Value

April 9, 1979

| SECURITIES | Book value | Market value |
|---|---|---|
| Bonds | $1,694,963 | $1,066,327 |
| Stocks | 3,964,687 | 5,179,091 |
| Total | 5,659,650 | 6,245,418 |
| CASH ACCOUNTS: | | |
| Certificate of deposit and accrued interest | 536,411 | 536,411 |
| Investment advisory -principal | 916 | 916 |
| -income | 15,733 | 15,733 |
| Checking | 231,251 | 231,251 |
| Prepaid Federal taxes | 3,731 | 3,731 |
| Accrued income | - - - | 24,072 |
| Total assets | 6,447,692 | 7,057,532 |
| Less: Accounts payable | - - - | - - - |
| NET WORTH | 6,447,692 | 7,057,532 |
| Common stock | 2,000,000 | 2,000,000 |
| Paid in surplus | 2,778 | 2,778 |

|  | Book value | Market value |
|---|---|---|
| Retained earnings | $4,444,914 | $4,444,914 |
| Appreciation - market value | - - - | 609,840 |
| SHAREHOLDER'S EQUITY | 6,447,692 | 7,057,532 |
| Per share (20,000 shares) | 322.38 | 352.88 |

The cost of liquidating R.B. Davis on the valuation date would have been $48,672.30. The cost of liquidating Jephson Finance on the valuation date would have been $46,164.13.

Petitioner valued for estate tax purposes the decedent's interests in R.B. Davis and Jephson Finance by applying discounts of 28 percent and 31.3 percent, respectively, to their net asset values, to reflect the lack of marketability of the stock of each company. The amount of the discount was determined by reference to the discount from net asset value of 10 publicly traded closed-end investment funds which had portfolio profiles similar to those of the two companies involved herein.

Respondent claims that the values of the companies are their net asset values, less liquidation expenses. Respondent argues that no discount for lack of marketability is appropriate because any purchaser of decedent's 100-percent interest in the investment companies would acquire unconditional control over, and access to, their underlying cash and securities. Respondent further contends that direct ownership of the cash and securities could be obtained in a tax-free transaction pursuant to section 337.[1]

ULTIMATE FINDINGS OF FACT

(1) On April 9, 1979, the stock of R.B. Davis Investment Co. had a value of $2,922,786 (i.e., its net asset value, less liquidation expenses).

(2) On April 9, 1979, the stock of Jephson Finance Co. had a value of $7,011,368 (i.e., its net asset value, less liquidation expenses).

---

[1] All section references are to the Internal Revenue Code of 1954 as amended and in effect on the date of decedent's death.

OPINION

Section 2031(a) mandates inclusion in the gross estate of the value of all property owned by a decedent at the time of death. For estate tax purposes, in general, value means fair market value on the applicable valuation date.[2] Fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under compulsion to buy or to sell and both having reasonable knowledge of all relevant facts. Sec. 20.2031-1(b), Estate Tax Regs.

Valuing stock of a closely held corporation is a factual determination for which there is no talismanic formula. A weighing of all relevant facts and circumstances is required. In determining such value, section 2031(b) requires that consideration be given, in addition to all relevant factors, to the price of stock of corporations engaged in the same or similar line of business which are listed on an exchange.

After considering all relevant facts and circumstances, we find that the date of death values of R.B. Davis and Jephson Finance Co. are their respective net asset values, less the cost of liquidation. The factors that persuaded us in reaching this finding are: (1) All the assets of both investment companies were liquid assets, i.e., cash and marketable securities; (2) neither corporation had any liabilities which had to be seriously considered in valuing the companies; (3) the decedent's 100-percent ownership of both companies gave her (or her estate) the unqualified right to liquidate both companies at any time. In our opinion, neither the decedent nor her estate nor a hypothetical seller would have sold the stock of either company for less than that which could have been realized through liquidation. We further believe that a hypothetical purchaser would be willing to pay such an amount.[3]

We recognize that the value of an interest in an investment company is not always equal to its proportionate share of the company's net asset value. For example, we have applied a discount where a minority interest was being

---

[2] A decedent's gross estate is valued as of the date of death, unless the executor elects (pursuant to sec. 2032) the alternate valuation. Here, no such election was made.

[3] The hypothetical purchaser, by purchasing the companies, would save brokerage fees that otherwise would have to be paid to acquire approximately $9 million of marketable securities.

valued. *Harwood v. Commissioner*, 82 T.C. 239, 264-269 (1984), affd. without published opinion 786 F.2d 1174 (9th Cir. 1986); *Estate of Piper v. Commissioner*, 72 T.C. 1062 (1979); *Estate of DeGuebriant v. Commissioner*, 14 T.C. 611 (1950), reversed on another issue sub nom. *Claflin v. Commissioner*, 186 F.2d 307 (2d Cir. 1951). We have also allowed a discount for the nonmarketability of an investment company's stock, particularly where its assets consist of real estate or other nonliquid assets. *Estate of Piper v. Commissioner*, 72 T.C. 1062 (1979); *Estate of Andrews v. Commissioner*, 79 T.C. 938 (1982). Here, however, there is neither a minority interest nor any nonliquid assets.

Petitioner does not argue that it is entitled to a minority interest discount, since it owns all of the stock of both companies. Nevertheless, petitioner indirectly seeks to obtain a minority interest discount by analogizing R.B. Davis and Jephson Finance to publicly traded closed-end investment companies. We agree that in many respects R.B. Davis and Jephson Finance are comparable to closed-end investment companies. Also, we recognize that stock in closed-end investment companies often sells for less than net asset value. However, an investor in a closed-end investment company has little or no say in the selection of the company's investment advisor or the company's portfolio and cannot easily force the liquidation of the company. Petitioner did not present any evidence of sales of controlling interests in closed-end investment companies. The sale of a controlling interest in a closed-end investment company might well command a premium, rather than be subject to discount. In any event, we find inapposite petitioner's comparison of the sale of 100-percent interests in R.B. Davis and Jephson Finance to sales of minority interests in publicly traded closed-end investment companies.

Petitioner next argues that a discount for nonmarketability is warranted. Petitioner contends that marketable securities and cash, when held in corporate solution, are not readily marketable. This argument ignores the fact that complete ownership of each corporation enables petitioner to obtain, at any time, direct ownership of the corporate assets either through a partial or complete liquidation or through a dividend in kind.

Lastly, petitioner argues that a purchaser of the stock of R.B. Davis and Jephson Finance would demand a discount for the existence of unknown liabilities. Only R.B. Davis was an operating company[4]— it manufactured baking powder prior to 1955. The potentially hazardous substance allegedly included in the baking powder manufactured by R.B. Davis is alum, which around 1905 was thought to be hazardous to health. Petitioner submitted no evidence that alum is hazardous to health or that any liability for its use was ever imposed on R.B. Davis or any other manufacturer of baking powder, or that any hazardous effects of alum had remained undetected for the 24 years which had elapsed between the date R.B. Davis ceased to manufacture baking powder and the date of decedent's death. In any event, any claim brought against R.B. Davis would probably have been time-barred. In short, we are not persuaded by this argument and believe that here no discount is warranted for unknown liabilities.

Respondent conceded that there should be a reduction for the transactional costs which the owner of R.B. Davis and Jephson Finance stock would incur in obtaining direct ownership of the corporate assets through a liquidation. We have accordingly taken these costs into account in valuing both companies.

To reflect the foregoing and the concessions of the parties,

*Decision will be entered under Rule 155.*

---

[4] As previously noted, Jephson Finance was at all times an investment company.